IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TUAN PHAN, <br><br> Plaintiff, <br><br> v. <br><br> BEST FOODS INTERNATIONAL INC., *et al.*, <br><br> Defendants. | No. C 14-0888 RS <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS** |

## I.   INTRODUCTION

This motion arises from a long-running dispute between plaintiff Tuan Phan and numerous individual and entity defendants. After two years of litigation in state court, plaintiff lodged a second amended complaint (SAC) averring a slew of racketeering allegations. Defendants removed, invoking original federal jurisdiction under RICO, and now seek to dismiss numerous claims in the SAC: the first claim (violation of RICO), third claim (violation of California's Unfair Competition Law), fifth claim (breach of oral employment contract) and ninth claim (retaliation). Defendants also move to strike the SAC's broad requests for attorney fees. Because the SAC fails to plead facts demonstrating that Phan was harmed by any of defendants' alleged racketeering acts, the RICO claim is dismissed with leave to amend. Unless and until Phan revises his pleadings to state a viable RICO claim, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the motion is granted in part.

## II. BACKGROUND[1]

Plaintiff Tuan Phan is a consultant and real estate broker residing in Santa Clara County, California. In 2010, he became involved in a series of business and real estate ventures that quickly turned sour. The factual averments in the SAC are too voluminous to warrant summarizing here, but the gist of Phan's allegations is that numerous entity and individual defendants defrauded him out of his personal investments and the value of his professional services.

It all began in June 2010, when Phan accepted an offer to serve as an officer for defendant Best Foods International Inc. ("BFI"), a fledgling seafood distributor and wholesaler located in Hayward, California. A few months later, defendants persuaded Phan to invest in Intercon Marketing & Investments Inc., a California corporation with close ownership ties to BFI. Phan also agreed to provide brokerage services to Tan Vo, Intercon's controlling shareholder. In addition, Vo enlisted Phan to travel abroad to perform various financial consulting services in Vietnam, Singapore, and China. According to the SAC, Phan eventually came to understand that his business partners and employers were involved in myriad illegal activities including tax evasion, fraud, and money laundering. He further learned that defendants had engaged his services with the expectation that Phan would help facilitate or conceal their unlawful conduct.

Instead of acceding to defendants' requests, Phan objected to their unlawful actions. According to the SAC, defendants retaliated swiftly and severely. Phan avers that, among other things, defendants defrauded Phan out of his interest in Intercon, threatened him with death and dismemberment, defamed him and his accounting practice, and refused to pay fees and wages owed under various oral agreements. BFI ultimately fired Phan in December 2010—just six months into a purported one-year term employment contract.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss. This same presumption applies to additional averments summarized in the Discussion section below.

complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

IV. DISCUSSION

A. First Claim: RICO

The first claim proceeds under 18 U.S.C. § 1962(c), which makes it unlawful for any person associated with an alleged racketeering enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).[2] To state a civil claim for violations of § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."[3] *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

The central thrust of defendants' motion is that Phan fails to plead facts supporting the fifth element—that defendants' alleged racketeering acts caused injury to Phan's business or property. First, defendants emphasize that Phan's RICO averments focus largely on alleged injuries to third parties, not to plaintiff himself. For example, a significant portion of the SAC details money laundering operations allegedly undertaken in Vietnam, India, Singapore, and the United States for the purpose of evading tax liability. Phan also goes into great detail alleging that various defendant entities were undercapitalized and operated in a manner to defraud third-party creditors and investors. Phan does not contend, however, that he was harmed by *all* of these acts. Instead, these third-party averments serve to support other key elements of his RICO claim: that defendants operated racketeering enterprises that were engaged in patterns of racketeering activity. Accordingly, the SAC's third-party allegations, while excessive and often redundant, are not *per se* irrelevant to pleading the first claim.

After laying down forty-one pages of far-flung racketeering averments, the SAC identifies seven separate RICO injuries allegedly suffered by plaintiff:

    i.    Tan Vo's alleged use of a U.S. wire to defraud Phan of compensation promised in exchange for brokerage services,

---

[2] Although Phan's opposition makes passing references to RICO § 1962(d), the SAC does not invoke this separate RICO provision.

[3] While § 1962(c) defines the unlawful conduct, § 1964(c) authorizes private plaintiffs to seek civil remedies for injuries caused by § 1962 violations.

    ii.        Tan Vo's allegedly fraudulent use of a U.S. wire to induce Phan to conduct three weeks of extra work in Singapore, China, and Vietnam without compensation,

    iii.       alleged mail fraud undertaken by the Tan Vo enterprise and BFI to provide the IRS with incorrect payroll data regarding Phan's employment, thereby depriving Phan of credit for his employer's matching Social Security payroll contribution,

    iv.       Tan Vo, Thi Vo, and Phong Tran's alleged use of extortion, wire fraud, and mail fraud to induce Phan to sell his interest in Intercon for less than fair market value,

    v.        defendants' use of U.S. mail and a U.S. wire to convert $50,000 of Intercon funds to pay Phong Tran's personal credit cards at a time when Phan held a 16.67% interest in the entity,

    vi.       the Vo-Nguyen enterprise's alleged use of extortion to intimidate Phan and dissuade him from doing business in Oakland, thereby depriving him of approximately $50,000 of profits per year for three years, and

    vii.      various defendants' alleged use of a U.S. wire to defraud Phan out of receiving the full benefit of his one-year oral employment contract with BFI.

(SAC 78:6-79:3); *see also* (Pl. Opp., ECF No. 19, 7-9) (pairing the alleged RICO injuries with factual averments alleged elsewhere in the SAC). For each of these alleged harms to be actionable, Phan is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (*quoting Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). A causal link that is "too remote, purely contingent, or indirect" is insufficient. *Hemi Grp.*, 559 U.S. at 9. (quotation marks and alterations omitted).

        *i.*       *First Injury: Fraudulent Deprivation of Broker's Fee*

The SAC alleges that in or about August 2010, Tan Vo engaged Phan to broker the purchase of a building owned by Peter Nguyen in Hayward, CA. In exchange for his services, Phan was to be paid a 3% commission on the sale price. Throughout the negotiations between Tan Vo and the sellers, Vo and his agent Phon Tran allegedly used a U.S. wire to correspond with Phan "regarding the status of the purchase." (SAC ¶ 195). After performing a significant amount of work securing financing and moving the deal towards completion, Phan learned that the buyer and sellers were

conspiring to misrepresent the building's value to prospective lenders GE Capital and SBA. In particular, Tan Vo and Peter Nguyen allegedly planned to misrepresent that the Hayward building's refrigeration system (purportedly worth $1 million when working properly) was defective and could cause a major hazard to the property. This misrepresentation would, they hoped, convince the lenders to write off a larger amount of the mortgage debt. Phan, wanting to avoid complicity in the fraudulent transaction, resigned from his position as agent. The transaction was completed on the same or similar terms as those arranged by Phan, but he was not paid for his services.

These factual averments fail to support Phan's claim that he was proximately harmed by any predicate racketeering act. It is not enough that defendants used a U.S. wire to communicate with him "regarding the status" of the deal *after* he agreed to serve as an agent. (SAC ¶ 195). Even assuming Tan Vo's alleged fraudulent inducement proximately caused plaintiff to lose out on his promised commission, there are no facts indicating that such inducement occurred *because* of defendants' fraudulent use of a U.S. wire. The alleged wire fraud was, at best, tangential to plaintiff's injury; it was surely not the "but for" cause or proximate cause of his loss of the brokerage commission. *Hemi Group*, 559 U.S. at 9. Moreover, it is problematic that Phan now seeks to benefit from an allegedly illegal transaction after stepping down from his role as agent. The first alleged injury is not cognizable under § 1962(c).

### ii.     *Second Injury: Fraudulent Deprivation of $30,000 Fee*

The second injury, like the first, is premised largely on an allegedly fraudulent oral promise made by defendant Tan Vo. The SAC avers that on or about September 22, 2010, Tan Vo verbally promised to pay Phan $30,000 to travel to Singapore, China, and Vietnam to "provide advice and assistance concerning transfer pricing to Tan Vo and his controlled corporations (i.e. the Tan Vo enterprise)." (SAC ¶ 110). According to the SAC, the "main purpose" of the trip was to "study and seek ways to legally justify Tan Vo's transfers of money from Vietnam to Singapore and to review the setting up of the Hong Kong Co and Seychelles Co[.]" *Id.* The SAC further avers that eight days earlier, Tan Vo sent Phan an email containing his Asian travel itinerary.[4] Phan claims Tan

---

[4] The SAC does not explain why Phan's travel itinerary was finalized eight days before he agreed to work in Asia on behalf of Tan Vo.

Vo's $30,000 offer was fraudulent because Vo did not intend to compensate Phan unless he helped cover up various illegal money transfers and other unlawful practices pertaining to defendants' dealings in Asia. As with the Hayward building purchase, Phan did not want to aid and abet defendants' unlawful acts, so during his three-week Asia trip, he "indicated to Tan Vo that there was no economic justification" for various of Vo's foreign transactions and "object[ed] to the setting up of the Hong Kong Co. and Seychelles Co. . . . to launder money into the United States since it was unlawful and constituted criminal offenses." (SAC ¶ 112). Due to his unwillingness to be complicit in Tan Vo's allegedly illegal plans, Phan was not paid for his services.

As with the first injury, this allegedly fraudulent offer for compensation was made verbally. While Tan Vo may have sent Phan an email with his travel itinerary, the SAC lacks specific averments explaining how this particular email was fraudulent. *See* Fed R. Civ. P. 9(b). Moreover, even if the email was fraudulent, it is far from apparent that Tan Vo's wire communication proximately caused Phan's alleged harm. To the extent Tan Vo fraudulently deprived Phan of $30,000, such loss is not attributable to any predicate racketeering act alleged in the SAC.

### iii. Third Injury: Payroll Tax Fraud

Phan's third injury flows from certain defendants' alleged scheme to obtain an undeserved refund check from the Internal Revenue Service. During the latter half of 2010, while plaintiff served as an officer for BFI, payroll taxes were deducted from his paycheck each pay period. The SAC avers, however, that after Phan left BFI, Tan Vo, Thi Vo, and Phong Tran filed a fraudulent document with the IRS asserting that Phan had received no wages whatsoever during the fourth quarter of 2010. On the basis of defendants' misrepresentation, which was sent via U.S. mail, the IRS issued a $4,100 refund check directly to BFI.

Phan's theory of injury is extraordinarily tenuous; he contends the refund check "include[ed] funds which should have been credited to Plaintiff's Social Security earnings record to benefit him in his retirement." (SAC ¶ 163). In other words, plaintiff contends that if the refund check had not issued, his Social Security benefits would see some marginal increase upon his eventual retirement. Although Phan has, in theory, identified some cognizable (albeit infinitesimal) harm, he nonetheless lacks standing to vindicate this injury. Article III standing requires, among other things, that a

plaintiff demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Phan's prayer for relief makes the ludicrous request that he be compensated $12,300 for this injury—$4,100 for the value of the fraudulently-obtained refund check, plus treble damages. This request misses the mark completely. First, it borders on the preposterous that Phan would appear in court claiming entitlement to a refund check that was fraudulently obtained from the IRS. That is obviously not the proper remedy. If, as he alleges, defendants defrauded the IRS by misrepresenting the length of plaintiff's employment at BFI, the only way to restore order and return the parties to their rightful positions would be for defendants to reimburse the agency. This is not, however, what Phan requests; nor does he offer any authority for the notion that a federal court can provide such a remedy in a private civil suit. As such, Phan fails to demonstrate it is "likely" that this injury will be redressed by a decision in his favor.[5] *See id.* He therefore lacks Article III standing to pursue this portion of his RICO claim.

*iv.     Fourth Injury: Under-market Sale of Phan's Intercon Interest*

Phan alleges that various defendants engaged in acts of extortion, wire fraud, and mail fraud causing Phan to sell his interest in Intercon Marketing & Investments Inc. "for less than fair market value." (SAC ¶ 218; Pl. Opp., 7:25-26). In August 2010, Phan and Tan Vo entered into an agreement whereby Phan would invest $100,000 in Intercon, a joint real estate venture, in exchange for a 16.67% share in the company. After Phan objected to defendants' illegal business practices, Tan Vo, Thi Vo, Phong Tran and Peter Nguyen "worked in concert to threaten to kill or harm Plaintiff." (SAC ¶ 45). First, when Phan confronted Peter Nguyen about his alleged theft and sale of several containers of frozen squid belonging to BFI, Nguyen screamed and threatened to kill him. Phan then traveled to Vietnam, where he planned to tell Tan Vo about Nguyen's actions. Upon learning the news, Tan Vo fired Phan from his Asian consulting position and allegedly schemed to cover up Nguyen's theft from BFI. Several days later, Tan Vo confronted Phan at a hotel in Ho Chi

---

[5] Nor is it apparent that this injury is sufficiently concrete to satisfy Article III's "injury in fact" requirement. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring that plaintiff establish "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical") (quotation marks and citations omitted).

Minh City and threatened to hire a Vietnamese gang to cut off his hands and ears.  A few weeks later, after Phan had returned to the United States, Phong Tran told him that various gangs in Oakland were looking to execute him.  The SAC avers that before any of these threats were delivered, Tan Vo, Phong Tran, and Peter Nguyen "routinely discussed over the phone" their plans to threaten Phan with death.  (SAC ¶¶ 211, 214).  "One purpose of the threats," the SAC alleges, "was to frighten Plaintiff so that he would . . . walk away from his investment in Intercon without insisting on a full and honest accounting."  (SAC ¶ 218).  Phan also claims the threats were intended "to induce Plaintiff, through threats of violence, to agree to transfer at less than fair market value, property rights Plaintiff held in Intercon Inc."  *Id.*

The SAC further avers that in December 2010 Tan Vo, Ti Vo, and Phong Tran formed an additional scheme to defraud Phan of profits owed due to his ownership in Intercon.  In particular, these defendants allegedly used a U.S. wire to communicate to Phan that Intercon was losing money and would soon be valueless.  In reality, the company was doing well enough to have generated a net profit exceeding $150,000, meaning Phan was due more than $25,000 by virtue of his 16.67% stake in the company.

From what can be gleaned from the complaint's convoluted narrative of events, Phan eventually signed an agreement relinquishing his stake in Intercon on unfavorable terms:

> Tan Vo, Thi Vo and Phong Tran jointly defrauded Plaintiff and induced Plaintiff to sign the agreement transferring his ownership interest of Intercon, Inc. to Tan Vo by allowing the corporate bank account to be used to pay non-corporate expenses and by promising to pay Plaintiff his share of profits in the joint venture if he transferred his ownership interest in Intercon, Inc. to Tan Vo, but Tan Vo never intended to pay and never did pay.

(SAC ¶ 47).  Phan's averments again fall short of establishing that any of defendants' alleged predicate RICO acts were the proximate and actual cause of his injury.  While the SAC spends pages upon pages describing numerous bad acts allegedly directed at plaintiff, it lacks sufficient averments supporting the notion that defendants' alleged threats or fraudulent wire communications "led *directly* to the plaintiff's injuries"—here, Phan's loss of investment proceeds in Intercon.  *See Anza*, 547 U.S. at 461 (emphasis added).  To the extent there is any causal link between defendants'

racketeering acts and plaintiff's sale of his stake at "less than fair market value," it is far too remote or indirect to provide a sufficient basis for a RICO claim.[6] *See id.*

        *v.*        *Fifth Injury: Reduction of Plaintiff's Ownership Interest in Intercon*

Plaintiff claims that Phong Tran used $50,000 of Intercon company funds to pay off his personal credit card debt. Tan Vo, Intercon's majority shareholder, allegedly facilitated this improper use of corporate funds. Plaintiff now seeks to recover $8,300, representing his pro rata share of the misappropriated Intercon monies.

As an initial matter, defendants argue that Phan lacks standing to sue for this injury. Indeed, a single shareholder "generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993). There is an exception, however, when the alleged injury is not merely "derivative of harm to the corporation." *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988). Here, plaintiff alleges not only that Phong Tran misappropriated corporate funds, but also that Tan Vo, Intercon's majority shareholder, facilitated (and personally benefitted from) the misappropriation. In other words, Phong Tran's acts allegedly caused a unique detriment to Phan, the sole minority shareholder with nothing to gain from this misuse of Intercon funds. Plaintiff's alleged injury is therefore not derivative of harm to Intercon itself; it is unique to plaintiff in particular. *See Bader v. Anderson*, 179 Cal. App. 4th 775, 793 (2009) (summarizing the difference between "direct" and "derivative" claims under California law).

Yet while Phan has standing to pursue this piece of his RICO claim, his averments nonetheless fail to support his allegation that defendants' racketeering acts were the actual and proximate cause of his injury. First, the SAC fails to aver facts indicating "where, when, and how" defendants' charged misconduct amounted to federal mail or wire fraud. *See Cooper*, 137 F.3d at 627. Tan Vo and Phong Tran may have corresponded via email and telephone to coordinate the improper use of Intercon funds, but it is unclear from the SAC how defendants' acts constituted mail

---

[6] Moreover, there appears to be a mismatch between the injury alleged and the recovery sought. On one hand, Phan claims he was induced to sell his interest for "less than fair market value." He further avers, however, that Vo "never intended to pay and never did pay." (SAC ¶ 47). Because Phan is now claiming a right to the *full* monetary value of his Intercon stake, it is arguably irrelevant that he was, for some stretch of time, misled into thinking his interest held some lower value.

No. C 14-0888 RS
ORDER ON MOTION TO DISMISS

or wire fraud.[7] Absent more specific averments "stat[ing] with particularity the circumstances constituting fraud," *see* Fed. R. Civ. P. 9(b), defendants cannot meaningfully defend against Phan's vague allegations that their misuse of corporate funds constituted a predicate racketeering act. RICO was not intended to facilitate a federal racketeering claim every time a majority shareholder pilfers corporate funds for an improper purpose. *See In re Teledyne Def. Contracting Derivative Litig.*, 849 F. Supp. 1369, 1377 (C.D. Cal. 1993) ("RICO was not intended to federalize internal corporate relationships."). Second, even assuming that Tan Vo and Phong Tran engaged in mail or wire fraud surrounding the improper use of Intercon funds, the SAC nonetheless fails to explain why defendants' fraudulent use of U.S. mails or wires actually *caused* Phan's alleged loss.

In sum, if Phan has a colorable claim that defendants (1) engaged in mail or wire fraud that (2) actually and proximately caused him to lose $8,300 of Intercon monies to which he was entitled, the SAC lacks sufficient averments to support such an argument. Accordingly, this injury is not cognizable under § 1962(c).

### *vi.     Sixth Injury: Extortion Causing Lost Profits*

Plaintiff's sixth injury flows from the same allegedly extortionate conduct discussed above. According to the SAC, defendants' threats of death and violence caused plaintiff "to completely forego providing tax and audit representations services in Oakland." (SAC ¶ 225). As a result, he seeks three years' worth of lost income, estimated at approximately $50,000 per year, for a total of $150,000. This harm is too conjectural to support a claim under § 1962(c), which requires that the alleged violation lead "directly" to the plaintiff's injuries. *See Anza*, 547 U.S. at 461. It is far too speculative for Phan to aver that, had defendants not engaged in extortionate threats, he would have successfully carried out three years' worth of profitable business in the Oakland area. Because the SAC's averments fail to raise plaintiff's right to relief "above the speculative level," his RICO claim for lost income must be dismissed. *See Twombly*, 550 U.S. at 545 (2007).

---

[7] Although Phan points to an email allegedly revealing that Intercon funds had been misused for this particular purpose, there is no indication that the communication itself was fraudulent.

   *vii.*  *Seventh Injury: Defrauding Plaintiff of Guaranteed Employment*

Finally, Phan invokes RICO in an attempt to recover for defendants' allegedly fraudulent breach of an oral employment agreement. According to the SAC, Tan Vo made an oral offer to employ Phan as CFO of BFI for one year at a salary of $150,000. Phan contends that Tan Vo's promise was fraudulent; as with other promises he made to plaintiff, Vo allegedly had no intent to perform under the contract unless Phan carried out certain illegal acts during his employment. In an attempt to shoehorn these allegations into the RICO statute, the SAC avers:

> The scheme to defraud the Plaintiff of full compensation for his services utilized the U.S. mail and U.S. wire in communications necessary to formalize the employment of Plaintiff and in communications necessary to direct or attempt to direct Plaintiff's activities on behalf of BFI, Inc. once he was employed. The fraud regarding this offer of employment and its premature termination was therefore mail fraud and wire fraud directed against Plaintiff.

(SAC ¶ 41). These cursory allegations fall far short of establishing that defendants engaged in mail or wire fraud. Again, plaintiff's efforts to hurdle Rule 9(b)'s particularity requirements fall far short. Be it eighty-two pages or eight pages, if his complaint lacks the "who, what, where, when, and how" of the charged misconduct, it is impossible to discern which *specific* acts are alleged to be fraudulent. *See Cooper*, 137 F.3d at 627. Moreover, as with all of the aforementioned RICO "injuries," the SAC fails to plead facts showing that defendants' racketeering acts were the actual and proximate cause of Phan's harm. Here, Phan's injury flows from his reliance on Tan Vo's oral promise of employment. Assuming that, as plaintiff alleges, he was fraudulently induced to work for BFI, it remains entirely unclear how this injury can be attributed "directly" to any racketeering acts committed by defendants. *See Anza*, 547 U.S. at 461. The seventh alleged injury, like the six before it, is not cognizable under the RICO statute.

  B. <u>Remaining State Law Claims</u>

The SAC fails to state a viable claim arising under federal law. The court therefore declines to exercise supplemental jurisdiction over Phan's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001). After two years of litigation in state court, it would be counterproductive to adjudicate this state law dispute in a federal forum. While it appears that defendants advance credible arguments against Phan's other claims, this order need not

address defendants' request to dismiss certain state law claims and to strike certain references to attorney fees.

## V.  CONCLUSION

If Phan's voluminous allegations are true, defendants might well be liable for some of his injuries. These harms do not, however, appear to be actionable under the federal RICO statute. Nevertheless, because the Ninth Circuit has advised that leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment, *see Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995), the first claim is dismissed with leave to amend. Should Phan elect to amend his pleadings, he must lodge an amended complaint within thirty (30) days from the date of this order. If Phan fails to cure the deficiencies in his RICO claim, the parties are hereby advised that this action will be remanded to state court.

IT IS SO ORDERED.

Dated: 4/28/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE