United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TUAN PHAN,

        Plaintiff,

  v.

BEST FOODS INTERNATIONAL INC., *et al.*,

        Defendant.
_____/

No. CV 14-00888 RS

**ORDER ON DEFENDANTS' MOTION TO DISMISS AND STRIKE THE THIRD AMENDED COMPLAINT**

## I. INTRODUCTION

This case arose from a breakdown in business relations between plaintiff Tuan Phan and various individual and entity defendants. After two years in state court, Phan filed a second amended complaint (SAC) alleging, among other things, numerous racketeering activities under the federal RICO statute. After defendants removed the case, Phan's RICO claim was dismissed with leave to amend. Phan then lodged a third amended complaint (TAC), prompting this second motion to dismiss the amended RICO claim and other state law claims. Defendants also move to strike the TAC's overbroad request for attorney fees. Because Phan now alleges an actionable RICO injury, his federal claim can proceed, but only under one of the three theories enunciated in the TAC. Phan's claim for retaliation is dismissed as untimely. Defendants' remaining requests to dismiss or

strike are denied. This matter is suitable for disposition without oral argument under Civil Local Rule 7-1(b).

## II. BACKGROUND[1]

Phan's numerous factual averments, as detailed in his voluminous pleadings, are summarized in the prior order. In short, Phan accepted an offer to serve as Chief Financial Officer of Best Foods International Inc. ("BFI"), a seafood distributor and wholesaler located in Hayward, California. As a BFI officer, Phan engaged in various business transactions with individual and entity defendants closely tied to BFI. According to Phan, he learned his employers and business partners were involved in numerous illegal activities, and that his employment was conditioned on facilitating and concealing such unlawful conduct. When Phan objected to this illegal conduct, defendants allegedly defrauded Phan, threatened to kill, dismember, and defame him, and refused to pay him fees and wages owed. Phan was ultimately terminated halfway through his alleged one-year employment contract.

The prior order dismissed Phan's RICO claim with leave to amend, reasoning that the SAC did not demonstrate defendants' racketeering activities proximately caused any of Phan's seven alleged injuries. Because plaintiff failed to state a federal claim, the order declined to address Phan's remaining state law claims. Phan's TAC attempts to remedy three of the seven RICO injuries alleged in the prior complaint: (1) deprivation of $30,000 consulting fee; (2) under-market sale of Intercon interest; and (3) misappropriation of $8,300 in Intercon funds. Defendants move again to dismiss the amended RICO claim, as well as three of Phan's state law claims: the third claim (violation of California B&P Code section 17200), the fifth claim (breach of oral employment contract), and the ninth claim (for "retaliation").

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint requires sufficient factual averments to "state a claim to relief that is plausible on its

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss.

No. CV 14-00888 RS
ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS
2

face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is context-specific, requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that parties "alleging fraud . . . state with particularity the circumstances constituting fraud[.]" To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.,* 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly,* 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996).

Federal Rule of Civil Procedure 12(f) allows any "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter" to be stricken from a pleading. Striking a matter under Rule 12(f) avoids spending time and money litigating spurious issues. *See Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

## IV. DISCUSSION

### A. First Claim: RICO

Phan's RICO claim is governed by 18 U.S.C. § 1962(c), which makes it unlawful for any person associated with an alleged racketeering enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a civil claim for violations of § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."[2] *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)). The prior order found Phan's SAC lacked sufficient factual averments supporting the fifth element of a RICO claim: causation. Indeed, for each alleged injury to be actionable, plaintiff must show the alleged predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *See Hemi Grp., LLC v. City of New York, N.Y.,* 559 U.S. 1, 9 (2010) (citation omitted). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006). A causal link that is "too remote, purely contingent, or indirect" is insufficient. *Hemi Grp.,* 559 U.S. at 9. (quotation marks and alterations omitted).

#### *i. Deprivation of $30,000 Consulting Fee*

The SAC alleged Tan Vo verbally promised Phan $30,000 to provide advice and assistance in Asia for two weeks, and that eight days earlier, Tan Vo had emailed Phan his travel itinerary for the same trip. Phan averred that while in Asia, he learned defendants were engaged in money laundering and other unlawful activities. After expressing his unwillingness to be complicit in any of Tan Vo's unlawful business endeavors, Phan was allegedly denied his $30,000 consulting fee.

The prior order rejected the consulting fee injury on multiple grounds. First, Tan Vo's alleged verbal promise, even if fraudulent, did not constitute a predicate act.[3] Phan also failed to

---

[2] While § 1962(c) defines the unlawful conduct, § 1964(c) authorizes private plaintiffs to seek civil remedies of injuries caused by § 1962 violations.

[3] RICO enumerates various "predicate acts," such as extortion, wire fraud, and mail fraud. 18 U.S.C. § 1961(1).

demonstrate the email containing Phan's travel itinerary was itself fraudulent, such that the communication would constitute wire fraud.  Second, even assuming Phan had alleged a predicate act of wire fraud, the SAC failed to demonstrate Tan Vo's email containing the travel itinerary proximately caused Phan's $30,000 loss.

The TAC attempts to remedy these deficiencies by averring the verbal promise to pay Phan occurred over the telephone.  During a mid-September telephone call from Vietnam to the U.S., Tan Vo allegedly misrepresented to Phan that his business activities in Asia were legal, and the money involved was "clean."  According to the TAC, Tan Vo intended to pressure Phan to assist in money laundering by threatening to withhold payment at the end of the trip.  Phan further alleges the illegitimate business ventures he discovered in Asia were:

> contradictory to the explicit assurances Tan Vo had given to Plaintiff over the phone when he induced Plaintiff to assist Tan Vo. Plaintiff refused to assist Tan Vo in setting up the laundering of his funds into the U.S. and told Tan Vo to abort the money laundering network into the U.S. . . .  As a result, Tan Vo refused to pay Plaintiff for the time and services that Plaintiff had performed in [Asia].  The wire fraud and false representations of legality therefore proximately caused damage to Plaintiff.

(TAC ¶ 142).  Phan also re-alleges that on September 16, 2010, Tan Vo sent Phan an email providing his travel itinerary and requesting that plaintiff obtain necessary visas.

The TAC's amended averments now sufficiently plead a predicate racketeering act under RICO.  While Phan still fails to demonstrate that Tan Vo's email was fraudulent, the allegations regarding the mid-September phone conversation adequately state a claim for wire fraud.  Indeed, Phan "has alleged a scheme to defraud, the use of the mails and/or telephones in furtherance of the scheme, and the specific intent to defraud."[4]  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986).  Phan's allegations also "identify the time, place, and specific content of the false representations" conveyed during the alleged phone conversation, *see id.* at 1401, thereby satisfying Rule 9(b)'s particularity requirement.

---

[4] "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element." *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (citation and internal quotations omitted).

The TAC also includes sufficient averments to show the wire fraud proximately caused Phan's $30,000 loss. Phan alleges Tan Vo's fraudulent misrepresentations and concealments induced him to travel to Asia, where plaintiff expected compensation for assisting with legal business endeavors, and that defendants only intended to pay Phan if he assisted with their money laundering scheme. The TAC thus directly links the wire fraud to Tan Vo's ultimate failure to compensate Phan. Here, unlike cases where causation was too tenuous to state an actionable RICO claim, "there are no independent factors that account for [plaintiff's] injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue." *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). Because Phan has stated a claim for wire fraud, and has sufficiently alleged such predicate act proximately caused his $30,000 loss, Phan has stated a valid RICO claim based on his consulting fee injury.

*ii. Under-market Sale of Plaintiff's Intercon Interest*

In August 2010, Phan invested $100,000 for a 16.67% share of interest in Intercon, a joint real estate venture. The SAC claimed defendants induced Phan to sell his interest in the company through acts of extortion, wire fraud, and mail fraud. Among other averments, Phan claimed various defendants called him in December 2010, stating Intercon was losing money and would soon be worthless. In reality, however, the company had allegedly generated a net profit exceeding $150,000, entitling Phan to over $25,000 given his 16.67% stake. The prior court order concluded the SAC's convoluted narrative of events "lack[ed] sufficient averments supporting the notion that defendants' alleged threats or fraudulent wire communication 'led *directly* to the plaintiff's injuries[.]'" *Phan v. Best Foods Int'l Inc.*, C 14-0888 RS, 2014 WL 1677526 at *5 (N.D. Cal. Apr. 28, 2014) (emphasis in original).

While Phan now pleads with slightly more specificity, alleging Tan Vo called Phan from Vietnam in the *first week* of December 2010 to tell him that Intercon was losing money, the TAC's allegations are no less confusing or contradictory than those in the SAC. Phan alleges the "misrepresentations reasonably induced Plaintiff to sell his interest in Intercon to Tan Vo for the cost of his initial investment." (TAC ¶ 48). Phan later claims, however, that he was induced to

No. CV 14-00888 RS
ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS

6

transfer his Intercon interest to Tan Vo when he was "promis[ed] . . . his share of *profits* in the joint venture if he transferred his ownership interest in Intercon, Inc. to Tan Vo, but Tan Vo never intended to pay and never did pay." (TAC ¶ 53) (emphasis added). Phan seems to suggest that on one hand, he was promised and paid his initial $100,000 investment under the false premise that there were no profits to share, and on the other hand, was assured of his share of the profits but later denied the additional payment. Despite the prior order's discussion of this "mismatch," *id.* at *5, n.6, plaintiff nevertheless includes the same conflicting averments in his amended complaint. Because it is still unclear what Tan Vo's alleged fraudulent misrepresentations even were, it is impossible to determine whether the purported wire fraud proximately caused Phan's alleged injury. Plaintiff has thus failed to state a cognizable RICO injury based on his under-market sale of Intercon interest. Moreover, as mentioned in the prior order, "RICO was not intended to federalize internal corporate relationships." *In re Teledyne Def. Contracting Derivative Litig.*, 849 F. Supp. 1369, 1377 (C.D. Cal. 1993).

*iii. Reduction of Plaintiff's Ownership Interest in Intercon*

The SAC alleged Phong Tran used $50,000 of Intercon funds to pay off his personal credit card debt, and that Tan Vo facilitated this improper use of corporate funds. According to the SAC, Phong Tran and Tan Vo communicated via email and telephone to coordinate their improper use of Intercon funds. Phan claims he is owed $8,300, his pro rata share of the misappropriated monies.

The SAC's attempt to state a cognizable RICO injury based on Phan's reduction of Intercon interest failed on multiple grounds. First, despite the alleged email revealing the misuse of Intercon funds, the SAC lacked specific averments demonstrating the email itself was fraudulent. Phan's vague allegations also failed to "identify the time, place, and specific content of the false representations," and thus did not satisfy Rule 9(b)'s heighted pleading standard. *See Schreiber*, 806 F.2d at 1401. Second, even if Phan had adequately stated a claim for wire fraud, the SAC did not show any predicate act proximately caused Phan's loss of $8,300.

The TAC newly alleges the fraudulent payments themselves "required use of U.S. mail or U.S. wire to transfer funds from Intercon to Phong Tran's credit card billing address" in a series of transactions from May to December 2010. (TAC ¶ 50). Tan Vo and Phong Tran allegedly reached

No. CV 14-00888 RS
ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS
7

this agreement during a telephone conversation and confirmed the arrangement in an email. Phan also claims "tax avoidance . . . required the use of the U.S. wire and U.S. mail for federal and state tax filings as an essential part of the fraudulent scheme." (TAC ¶ 51).

Despite these additional averments, the TAC still fails to state an actionable RICO claim based on Phan's $8,300 loss of Intercon funds. As an initial matter, it remains unclear why the alleged email revealing the misuse of Intercon funds was itself fraudulent. Phan's attempt to allege wire fraud based on defendants' illegal tax filings is also unpersuasive. The extremely broad averment of tax evasion does not satisfy Rule 9(b)'s heightened pleading standard. Even if Phan had met the particularity requirement, however, the claim would still fail because the alleged conduct does not directly harm Phan, but rather the State. *See Anza*, 547 U.S. at 458 ("The direct victim of [the alleged wire and mail fraud] was the State . . . . It was the State that was being defrauded and the State that lost tax revenue as a result").

Additionally, the TAC lacks sufficient factual averments to demonstrate the fraudulent transactions paying off Phong Tran's credit card debt constitute wire fraud. Because Phan only refers generally to "several" fraudulent transactions during an eight-month period, (TAC ¶ 50), and does not "identify the time, place, and specific content" of the payments, the allegations fail to satisfy Rule 9(b)'s heightened pleading standard. *See Schreiber*, 806 F.2d at 1401; *see also U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1061 (N.D. Cal. 1991) (rejecting plaintiff's fraud averments where "[n]ot one specific wire communication [was] mentioned in the complaint"). Phan thus fails to plead with particularity such that the allegedly fraudulent credit card payments could constitute a predicate act. As explained in the prior order, "RICO was not intended to facilitate a federal racketeering claim every time a majority shareholder pilfers corporate funds for an improper purpose." 2014 WL 1677526 at *6.

B. Third Claim: Violation of California B&P Code Section 17200

California's unfair competition law ("UCL") prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200. Accordingly, "an act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Property*

*Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007). A court may determine a practice is "unfair or deceptive" under the UCL "even if it is not unlawful." *Cal-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, although the TAC is hardly a model of clarity, Phan appears to assert claims under each of the statute's three prongs.

Defendants move to dismiss this claim in its entirety, arguing Phan lacks standing to pursue relief under the statute. Focusing on the TAC's numerous averments regarding alleged injuries to BFI's competitors in the seafood industry, defendants argue that Phan's UCL claim is premised merely on non-actionable injuries to third parties. Yet while Phan's UCL claim is, like his RICO claim, suffused with irrelevant and immaterial allegations, it contains sufficient averments of individual harm to survive a motion to dismiss. As explained above, the TAC states a colorable claim for relief under RICO. Phan also alleges in his second claim, which defendants do not challenge in this motion, that defendant BFI violated various provisions of the California Labor Code by failing timely to pay Phan's wages upon his termination. These averments, if true, establish that Phan suffered an "economic injury" as a result of defendants' allegedly unlawful conduct. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011).

For purposes of resolving defendants' motion, it is sufficient to conclude that the TAC states a claim for relief under the "unlawful" prong of the UCL. Accordingly, defendants' motion is denied with respect to the third claim.

C. Fifth and Ninth Claims: Statutes of Limitations

Defendants also seek dismissal of Phan's fifth and ninth claims, contending both are barred by applicable statutes of limitations. In his fifth claim, Phan alleges defendants breached an oral contract to employ him for a one-year term. According to the TAC, defendants terminated Phan on December 22, 2010, approximately six months before the completion of his employment term. The ninth claim alleges this same conduct constituted "retaliation." (TAC ¶ 337-39). Because both claims are limited by a two-year statute of limitations, *see* Cal. Code Civ. Proc. §§ 335.1 and 339, Phan was required to raise his claims by December 22, 2012—two years after the termination giving rise to both claims. According to defendants, neither claim was raised until February 7, 2014, when Phan amended his complaint a second time.

Phan sees things differently, arguing both claims were pled "as early as" May 2012, when his First Amended Complaint ("FAC") was filed.[5] In support, he excerpts various allegations from that earlier pleading. As to the breach of contract claim, he points to the following averments from the FAC:

- "On or about June 8, 2010, Tan Vo and Plaintiff entered into an oral employment contract for one year to set up and manage the operations in Northern California known as Best Foods International, Inc." (FAC ¶ 21).

- "The employment contract between plaintiff and defendants was for one year. Plaintiff began work pursuant to his employment contract on or about June 8, 2010. Plaintiff undertook and continued employment and duly performed all the conditions of the contract to be performed by him." (FAC ¶ 55).

- "After 6 months, when all the key operations in the areas of sales, marketing, distributions, logistics, and finance were set up and established by Plaintiff and was running, plaintiff was terminated from his employment." (FAC ¶ 56).

- "As a result of the termination, plaintiff has been harmed in an amount according to proof." (FAC ¶ 57).

These allegations were sufficient to put defendants on notice of Phan's claim that his termination violated his purported one-year employment contract. Although the "fifth" claim in the FAC was later spliced into two separate claims based on two different oral contracts, it cannot be said that defendants had no notice of this particular claim.

The ninth claim, for "retaliation," is an entirely different story. Plaintiff insists this claim was pled in the FAC, wherein he alleged:

In September 2010, Plaintiff raised objections and concerns about possible material tax evasion and fraudulent reporting of the value of the land that Phong Tran had sold to Tan Vo and Thi Vo. Tan Vo and Thi Vo immediately terminated Plaintiff's employment and replaced him with Phong Tran who took over Plaintiff's position as president of Best Foods International, Inc. Tan Vo, Thi Vo and Phong Tan then took actions to retaliate against Plaintiff by not paying him his salary at termination, not reporting his wages to the Employment Development Department (EDD), not reporting his tax withholdings to the Treasury Department and Franchise Tax Board, and not issuing his W-2 at his request, etc.

FAC ¶ 22. These averments, buried within the general allegations of a nineteen-page complaint, did

---

[5] The FAC is attached to Phan's July 17, 2014 request for judicial notice. *See* ECF No. 41.

not put defendants on notice of Phan's intent to bring a distinct claim for defendants' allegedly retaliatory actions. As invoked in the FAC, the word "retaliation" was used merely in passing when discussing defendants' alleged violations of various tax, insurance, and labor statutes. While the payroll- and tax-related averments were tethered to particular claims for relief, *see* FAC Claim Two ("Failure to Furnish and Maintain Accurate Payroll Records") and Claim Three ("Failure to Report and Pay Payroll Taxes"), the FAC lacked any specific, separate claim flowing from the allegedly retaliatory motives underlying these adverse employment actions. While a plaintiff is not necessarily required to parse out each of his claims with a separate heading in the complaint, Phan cannot expect defendants to scour his pleadings in search of all keywords that might implicate other, yet-unnamed claims lurking in the background of his allegations. This is especially so where, as here, all other claims in the FAC were clearly identified and accompanied by citations to supporting law. Looking at the FAC in its entirety, that earlier pleading failed to put defendants on notice of this claim.[6]

Moreover, it is unclear what type of claim plaintiff intends to assert. The TAC does not specify, for example, whether Phan's claim for "retaliation" sounds in tort or arises under state labor law. In opposition to this motion, plaintiff contends the claim meets the requirements for Cal. Labor Code § 1102.5, the state whistleblower statute, but he fails to plead compliance with state law exhaustion requirements. *See Banko v. Appple, Inc.*, 13-02977 RS, 2013 WL 6623913 (N.D. Cal. Dec. 16, 2013) (dismissing § 1102.5 claim for failure to plead facts indicating the plaintiff filed an administrative complaint with the Labor Commissioner). He also appears to invoke Title VII of the Civil Rights Act, *see* Opposition at 25:12-13 (citing *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000)), but he fails to explain how that federal law is applicable here. In any event, Phan does not dispute that he was required to plead this claim within two years of his termination. Because this claim is untimely, it must be dismissed with prejudice.

---

[6] Defendants further argue that Phan's position in opposing this motion is contradicted by an earlier position he took in state court. They contend that Phan's counsel declared in a state court filing that the ninth claim for retaliation, as first raised in the February 2014 SAC, was a "new Cause of Action" of which counsel was previously "unaware." (Reply at 11:6-13). Defendants' contentions, if true, raise troubling questions about plaintiff's candor in his current submissions to this court. Because defendants failed to request judicial notice of these state court filings, however, there is no way to assess the merits of this argument.

E. Motion to Strike

Defendants also move to strike the TAC's broad request for attorney fees for "ALL CAUSES OF ACTION," (*see* TAC p. 89), arguing only a few of plaintiff's claims are tethered to fee-shifting statutes that would entitle an award of attorney fees. Motions to strike under Rule 12(f) are "generally disfavored" because such motions "may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *See Barnes v. AT & T Pension Ben. Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). Even assuming Phan would under no circumstances be entitled to attorney fees for all of his claims, adjudicating the fee issue at this early stage would not serve Rule 12(f)'s purpose of avoiding the expenditure of time and money on litigating spurious issues. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). The motion to strike is accordingly denied.

F. General Compliance with Rule 8

Defendants argue, as they did in their prior motion, that Phan's pleadings fail to comply with Rule 8's requirement that the complaint contain "a short a plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because the prior order concluded plaintiff failed to allege facts to state any federal claim, it declined to address defendants' more general Rule 8 objection. The order acknowledged, however, that the "excessive" SAC contained numerous "far-flung" and "redundant" allegations. 2014 WL 1677526 at *2-3. It also made clear that some of Phan's allegations were so "convoluted" as to be difficult to understand. *Id.* at 9. The TAC, totaling eighty-nine pages, makes virtually no attempt to clarify Phan's pleadings. Although Phan's fraud allegations must comply with Rule 9(b), this heightened standard does not free plaintiff of his obligation to state a coherent claim. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994) ("[A]lthough RICO complaints often might need to be somewhat longer than many complaints," they must still "meet the requirements" of Rule 8).

While the TAC is not so unwieldy as to be completely unworkable, it comes close. As this case moves forward, no party will benefit if the operative complaint is unnecessarily long and generally difficult to understand. Accordingly, plaintiff is ordered to file an amended complaint

within twenty days that omits all failed claims and irrelevant allegations. Because his RICO claim can proceed only under the theory that defendants defrauded him of his $30,000 consulting fee for his trip to Asia, Phan should pare down his voluminous RICO allegations to include only those averments relevant to establishing a claim under that theory.

## V. CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. Although Phan's RICO claim can proceed, only one of his alleged injuries is actionable. His ninth claim is dismissed with prejudice as untimely. While the remainder of defendants' motion is denied, plaintiff is hereby directed to file an amended complaint within twenty (20) days that omits all unnecessary and redundant factual averments. Phan may not include any new allegations without first seeking permission of this court. Plaintiff is further advised to cease his seemingly arbitrary practice of bolding certain portions of his pleadings.

IT IS SO ORDERED.

Dated: 7/29/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE